## Case No. 15,660a.

### UNITED STATES v. McCORMICH.

[2 Hayw. & H. 156.] [1]

Circuit Court, District of Columbia.　June 1, 1854.

#### VOTERS—QUALIFICATIONS—EVIDENCES OF.

1. In addition to the qualification to vote under the act of 1820 [3 Stat. 543], that of 1848 [9 Stat. 223] superadded the payment of a school tax.

2. Where every qualification was shown to be complete, the citizen possessing them is entitled to vote.

3. The evidence of qualification afforded by the registry is not exclusive; other testimony may be admitted, although registration is convenient and proper. Yet if not done, and all other things performed, the party is entitled to vote.

[This was an action by the United States, on the part of Charles S. Wallach, against William J. McCormich, register of the corporation of Washington. Heard on motion for a mandamus.]

The case was brought before the court by Mr. Wallach, who is a tax payer, has always resided in the city, and has been a legal voter for many years, but whose name has not been registered by the assessors.

Mr. Carlisle addressed the court on behalf of the corporation, and in reply to the petition of Mr. Wallach. He wanted uniformity at the polls, and asked a decision of the court for the guidance of the corporation and the commissioners. He read the petition at length, stating that he is every way a qualified citizen, and had paid all his taxes as called for by the two charters of 1820 and 1848. He therefore demanded his right to be considered as a legal voter. It is the view of the corporation, that by the charter of 1848 it is necessary to obey all the requisites to be entitled to vote. The claim of Mr. Wallach was based on the charter of 1820, and he (Mr. Wallach) asks that if his name was omitted through inadvertence or mistake, it might be now restored.

Mr. Carlisle based the right to vote under the present charter as the payment of the school tax, and held that the property qualification under the charter of 1820 is abolished; also if a citizen be not assessed before the 31st December he is not liable to be taxed afterwards. So far as the qualification of voters is concerned, the opinion of the corporation has been that the charter of 1848 supersedes that of 1820, and it was their desire to know from the court if their construction is right or wrong.

Mr. Chas. S. Wallach stated that there were three classes of individuals affected in this case. Did the charter of 1848 supersede that of 1820, or was it only cumulative and supplementary? Can a party be made to suffer through the inadvertence or carelessness of the assessors or the register? He contended

that the act of 1848 merely granted an extension of the right of suffrage, and did not invalidate the charter of 1820.

Mr. Coxe remarked that a very brief time had been given to reflect on this question, and asked if a citizen were to be denied his rights through the inadvertence of a corporation officer or officers; whether the same thing could not be done by design? For himself, he had never seen one of the poll-lists spoken of, they were almost invisible; one friend of his had seen one in a barber's shop, and another had seen one somewhere else. No ordinance of the city of Washington can have force, if without or against the law, or going beyond the law. The charter of 1848 continues that of 1820 in force, and enlarges it. The other side asserts that the payment of a school tax is what entitles to a vote; but if that is so, aliens and free negroes are entitled, contrary to the provisions of the act of 1820.

Mr. Coxe insisted that Mr. Wallach, or any citizen similarly situated, is entitled to an action at law against any judges or commissioners of election refusing to accept his proffered vote. He also insisted to that, by its ordinance of 1849, the corporation had transcended its powers, under the charter, in denying the right to vote, to all others than those who were registered in a certain way, and in fixing the 31st of December, nearly six months in advance of the time of election, as the day beyond which the names of citizens could not be registered. When assessors omitted giving in the names of parties as liable to school tax they violated their duty, either by accident or design; but a citizen was not to be made to suffer through their fault, nor to be deprived of the right to vote. Equally incapable is the corporation to refuse the power to revise the lists and correct mistakes and supply omissions; in doing this they transcend their powers. The Case of the Church, in Philadelphia, quoted by Mr. Carlisle, he thought went the other way. The powers were much larger than those granted to this corporation. He reasserted that the act of 1848 was cumulative and not destructive of the act of 1820, and that according to the decision of the court of king's bench, in England, in Ashby v. White [2 Ld. Raym. 938], Mr. Wallach would be entitled to an action against an officer of election, who should refuse his offer to vote.

Mr. Bradley, for the corporation, characterized the petition as seeking to repeal an ordinance of the corporation, which had stood the trial of three elections, and had until now been quietly acquiesced in by all our citizens. He denied that the corporation had no power to pass these regulations since congress had given it all powers necessary to carry greater powers into effect. The act of 1848 covered the whole ground, and compels the school tax in addition to other taxes, as necessary to qualification to vote. The corporation have done nothing beyond the exercise of this power. The ordinance of 1849 is

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

not contrary to the charter. If Mr. Wallach's exercise of suffrage is endangered, the fault is nobody's but his own, in not having examined the printed and published lists. Besides, the period for operation of a mandamus is now too late, it could apply only previous to the 31st of December.

Richard S. Coxe, for the citizens.

James M. Carlisle and Joseph H. Bradley, for the corporation.

THE COURT, after briefly consulting, decided that in addition to the qualification under the act of 1820, that of 1848 superadded the payment of a school tax, that all the requirements of the act of 1848 must be complied with. In Mr. Wallach's case, every qualification was shown to be complete. It is the assessor's duty to seek out citizens, and that of citizens to find if they have been enrolled, and if all his qualifications are complete, the citizen is entitled to vote. Mr. Wallach had a right to presume he was on the list. All persons having the requisite qualification, and subject to the school tax, ought to have been assessed, and are entitled to vote. Congress appeared to have two purposes in view in this act of 1848, one to describe the proper qualifications of a voter, and the other to raise a tax for the support of the public schools of the city. There were other purposes, but they were subordinate and directory, and not indispensable. The evidence of qualification afforded by the registry is not exclusive, other testimony might be admitted. Although registration is convenient and proper, and although ordered to be done, yet if not done, and all other things performed, the party is entitled to vote.

THE COURT granted no formal mandamus in Mr. Wallach's special case, the decision being general, and as such to be applied by the commissioners of election to his and all similar instances. He will therefore, under this judgment, be entitled to vote, notwithstanding the omission of his name on the list.